[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-10255
Non-Argument Calendar
_____

D.C. Docket No. 1:11-cv-20152-CMA


GUSTAVO A. ABELLA,

Plaintiff-Appellee,

versus

NANCY SIMON,
Individually and as a Miami Lakes Councilwoman, et al.,

Defendants,

JUAN F. RODRIGUEZ,
Miami Lakes Police Officer,
OFFICER BENJAMIN RIVERA,
MAJOR FRANK BOCANEGRA,
Individually,
RICHARD BAEZ,
Individually,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(July 5, 2013)

Before WILSON, PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

Officers Juan Rodriguez, Benjamin Rivera, and Richard Baez, and their supervising officer, Major Frank Bocanegra, appeal the denial of their motion to dismiss Gustavo Abella's third amended complaint based on qualified immunity. Abella complained about retaliation by each of the officers. We affirm.

Liberally construing his third-amended complaint, as we must, see Powell v. Lennon, 914 F.2d 1459, 1463 (11th Cir. 1990), Abella complained that Rodriguez, Rivera, Baez, and their superior officer, Bocanegra, retaliated against Abella for engaging in conduct protected by the First Amendment. Abella alleged that his conduct included displaying a political sign in his truck, reporting police misconduct, and photographing officers.

Abella complained that Rodriguez had retaliated against Abella and his family for displaying a political sign, voicing their opinion about the ordinance at town meetings, and filing grievances against Rodriguez. Abella alleged that Rodriguez ordered Abella to remove the sign from his truck; threatened to issue a

2

citation to Abella if he failed to remove the sign; appeared outside Abella's home and his daughter's school; and "ma[de] signs" at Abella while following him around town. Abella also alleged that, after he photographed Rodriguez outside the school, Rodriguez issued a citation to Abella for a parking violation and told Abella that "the complaints [he had] filed with the Commission on Ethics [would] not . . . do anything."

Abella's complaint alleged that Rivera had retaliated for the Abellas' complaints about police misconduct. Abella alleged that Rivera issued Abella a parking citation, followed him home, and then yelled out asking Abella's wife if she wanted his badge number or the phone number for the Miami-Dade Internal Affairs office. Later, during a hearing about the citation, Rivera grumbled about being assigned to the school because of the grievances filed by Abella.

Abella also complained that Baez interfered with being photographed and retaliated for the photos and having a grievance filed against him. Abella alleged that his wife photographed Baez standing outside her house and Baez approached the house to question her about the photos. Because the encounter frightened Abella's wife, she reported Baez's conduct to his supervisor. Two days later, Baez noticed that he was being photographed outside the school, walked to Abella's vehicle, and pushed the camera into Abella's face.

Abella's complaint also alleged that Bocanegra deliberately ignored the grievances against his subordinate officers and failed to discipline them for their alleged misconduct. Abella alleged that his attorney complained to Bocanegra about Rodriguez, but Abella did not witness a change in Rodriguez's conduct. Abella also alleged that he and his wife filed grievances, and sent letters and emails to Bocanegra about his officers' misconduct.

To survive a motion to dismiss based on retaliation for exercising rights under the First Amendment, Abella had to allege facts establishing, "first, that his speech or act was constitutionally protected; second, that the [officers'] retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech." Bennett v. Hendrix, 423 F.3d 1247, 1250 (11th Cir. 2005). The First Amendment "affords the broadest protection to . . . political expression," McIntyre v. Ohio Elections Comm'n, 514 U.S. 334, 346, 115 S. Ct. 1511, 1518 (1995), and protects the rights of speech and to petition for redress, U.S. Const. Amend. I; United Mine Workers of Am. v. Ill. State Bar Ass'n, 389 U.S. 217, 222, 88 S. Ct. 353, 356 (1967), and to photograph police activities, Smith v. City of Cumming, 212 F.3d 1332, 1333 (11th Cir. 2000). To establish a causal connection, Abella had to allege that his protected conduct was a "motivating factor behind" the officers' alleged misconduct, Smith v. Mosley, 532 F.3d 1270, 1278 (11th Cir. 2008), and

that the "history of widespread abuse put[] the[ir] responsible supervisor on notice of the need to correct the alleged deprivation, and he fail[ed] to do so," Braddy v. Fla. Dep't of Labor & Emp't, 133 F.3d 797, 802 (11th Cir. 1998).

The district court did not err by denying the officers' motion to dismiss based on qualified immunity.  Abella alleged facts sufficient to establish that Rodriguez, Rivera, and Baez had retaliated because Abella had exhibited a political sign, reported police misconduct, and photographed the officers.  See Bennett, 423 F.3d at 1254; Mosley, 532 F.3d at 1278.  Abella also alleged facts sufficient to establish that Bocanegra knew about, and failed to correct, his subordinate officers' unlawful conduct.  See Braddy, 133 F.3d at 802; see also Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990).  Although Abella was not deterred by being followed, stopped, ticketed, and intimated by the officers, those actions "would likely deter a person of ordinary firmness from the exercise of First Amendment rights."  Bennett, 423 F.3d at 1254.

We **AFFIRM** the denial of the officers' motion to dismiss.